My name is Mary Geddes and good morning Judge Pregerson, Candy, and Reggie. May I please introduce myself? I represent K.O. Saetern. A jury acquitted K.O. Saetern at trial of a 924C count. It hung on a felon in possession count, but it convicted him of two drug distribution counts, essentially two transactions committed on two separate days within a two-week period. A source of undue and ultimately fatal prejudice for Mr. Saetern was the court's abusive discretion in denying severance of the felon in possession count from the drug distribution counts. Mr. Saetern's attorney had acknowledged that a joinder with the 924C count was proper, since the gun alluded to and the act of possession were essentially one and the same. However, he insisted, both in an early written motion, then in a subsequent oral motion, and again at the final pre-trial conference on the first day of trial, that the 924C allegation was a shaky allegation, that the issue of gun possession was one that would be strongly contested, and given that the use of other crimes evidence in the form of a felon in possession count is not looked upon favorably in general, severance should be approved. His written motion was never actually opposed by the government. Nevertheless, the court ultimately denied the motion without any further discussion in writing. The case law concerning the required severance of the felon in possession depends on the strength of the case on the other charges. Is that right? That's correct, Your Honor. And in this case, not only did we have shaky evidence on the 924C count going in, but we also had a strong identity defense that was noticed to the government prior to the start of trial and was specifically discussed both in the initial pre-trial conference and on the day of trial. Well, I guess how strong the identity defense was is where you're really part company. I think that's true. The issue here, though, was it's certainly true that this is a case in which the prosecutor did not anticipate a strong identity defense on its two drug distribution counts. After all, there would be an undercover police officer identifying the suspect drug provider, T, as K.O. Saturn. But the prosecutor had discounted the very obvious problems with this case from the beginning, no forensic link between the drugs obtained and Mr. Saturn, no buy monies recovered, no phone or cell numbers used to contact T were linked to Mr. Saturn, no cars used by T were ever linked to Mr. Saturn either. And, of course, there was the lighting or lack of it in the parking lots used for the sales, and the police officer's insistence that Mr. Saturn was easily identified from the DMV photo because it showed that he had a distinctive damaged eye. Only the eye didn't look distinctive or damaged in the photo, according to Judge Holland, who reviewed it. So, in this case, what we were dealing with was the albatross, the anvil, if you were, that was carried around by the defense in this case that there was a prior conviction, leading the jury to ask the inevitable question while sequestered, well, what was he convicted for? Resort to the arguments by the prosecutor, both at the beginning and the end, answered that. This case is about a drug dealer. Although she didn't say this case is about a convicted felon, she characterized Esme as a drug dealer, and she used the testimony of Luis Martinez to expand the scope of alleged drug dealing activity far beyond the two specific acts which were actually the only factual matters before the jury. Well, it seemed that that was a fair characterization of what he was on trial for, was it not? Well, certainly he was on trial for two acts of providing drugs on two specific occasions. It just seemed to me that one of the things that occurred here is what you said in your opening, and that is that they didn't convict. In other words, the jury, in fact, did seem able to look at each of the counts individually, and I'm wondering, given the stipulation on the felon in possession and the fairly low-key approach at the outset that the prosecutor used, what do we make of the fact that the jury actually was able to separate these charges when it came back with its final verdict? Well, I think what we would make of it is that Mr. Seitern would have been acquitted also if the drug distribution counts, but for additional information provided by the prosecutor through the testimony of Elise Martinez and also through her argument that he was living the lifestyle of a drug dealer, that he was working the tools of the trade as a drug dealer. And I think we would have seen an acquittal on all counts but for the anvil, the heavy weight carried around by the defense in this case that he had a prior, leading the jury to the inevitable question, since they weren't strongly cautioned about the dangers of considering such a conviction, to assume that that's because he had a prior drug conviction. But didn't we have all the officers who saw him, who saw whoever T was, said that was Mr. Seitern when they saw him in the courtroom, and then we had one officer that actually sat next to him during one of these drug transactions? We had officers. So now we're really arguing over whether the jury should have believed your evidence or what I think is pretty strong evidence there put on by the prosecution. Well, we had one officer, Officer Herring, who actually had a close-up view of this individual. She couldn't remember if he had a hat on or not. She couldn't describe the jacket that he was wearing. She saw him inside of a car, very briefly, to say, whatever alias she was using, Don, I think. And for the drug dealer, he introduced himself as T. And then on a second occasion, she sat close to him while he provided the drugs. So that was a longer contact. But this was the same officer whose testimony was quite strongly, strenuously discounted and disbelieved by the jury on the question of whether or not she had actually seen him pull a gun out while she still had the door open to the car. So the jury obviously had some skepticism about this particular officer's ability to both observe and accurately report what she saw happen in the car. The observation that was made of Mr. Saturn in the courtroom by the officers was one of an Asian male. Mind you, this is the same officer who, in her first report on the transaction, used a particular description of him, which the police considered to be blonde, described him as white. And then, of course, he was neither blonde nor white. He was an Asian male. They subsequently relied on a DMV photo to make a connection between T and Mr. Saturn, saying that, of course, they recognized it was Mr. Saturn because the DMV photo showed that he had a distinctive and damaged eye when it was finally ultimately produced. The DMV photo had no such distinctive feature. And Judge Holland discounted it and would not allow the jury to specifically more closely view Mr. Saturn, who, in fact, was suffering from a really bad eye infection during the course of this trial. So I think that the jury had room to doubt and reason to doubt and question the credibility and the ability to observe on the part of the officer, Officer Herring. With respect to the other observations that were made of Mr. Saturn in the restaurant, there was discussion. If you review that testimony in the record, we have officers who were sitting at a bar separated by a pwning wall in a not-rightly-lit restaurant who never recount whether or not they were actually in a position to see Mr. Saturn, who they said was Mr. Saturn, sitting in the restaurant. They said that they saw an individual seated in the restaurant. They believed it was him. He was seated with a woman and a child. But they never said in what direction he was facing or whether or not they were able to or how they viewed him as he exited the restaurant. So their ability to recount at a distance of, I think it was, 20 to 30 feet in a not-well-lit restaurant, a London-style restaurant, while they're separated in a bar area, viewing him across a pwning wall, I think, is also subject to some dispute. With respect to the other officers... Someone behind you wants to hand you something. I had some papers for Mr. Saturn and his brother-in-law that he wanted to present to Your Honor. Oh, well. I'm sorry, he couldn't be here and solve the question. With respect to the other officers' ability to observe him and make an accurate identification, they were all stationed yards away in their cars in a dark parking lot and viewing a person who was exiting a lit restaurant into a dark car. And so their ability to actually observe and accurately identify him was also highly suspect. I see I'm out of time and I will end my presentation. May it please the Court, Steve Lane for the United States. The District Court didn't abuse its discretion here in denying the motion to sever the 922 GCAV from the two counts of conviction. The defendant cannot show the manifest prejudice that he is required to show in this instance, both because the evidence of his involvement in the two drug deals was overwhelming and because the District Court took very substantial steps to minimize the risk of prejudice. Also, I note that the prosecuting attorney properly downplayed the existence of this felony conviction, the conviction only mentioning it twice, mentioning the fact of the stipulation in her opening and closing and not, unlike the Lewis case relied on by the defendant, emphasizing the fact that the defendant was a felon. How many times do you have to say it? I'm sorry, Your Honor? How many times do you have to say that the defendant has been convicted of a felony? Once is enough, isn't it? Well, Your Honor, the prosecution mentioned it both in the opening and the closing only in going through the evidence on that particular count, on the 922 G count, and did not harp on it outside of that very narrow context. We basically got two statements, just noting the fact that the defendant had stipulated to having been convicted of a felony the first time around and during the closing, she said the defendant had stipulated to having been convicted of a crime punishable by more than one year in prison. But unlike the cases in which this Court has reversed convictions and found prejudice, the prosecutor here really did just mention it in presenting the evidence and did not emphasize it. Furthermore, the Court took substantial steps to minimize the risk of prejudice by instructing the jury first during voir dire that they would be hearing about a felony conviction and that they should not consider it except for on count three. The judge also repeated that instruction or made similar instructions at three different points in the trial, including at the time the stipulation was actually read to the jury. But the critical factor here, I think, is the evidence, the strong evidence that the defendant, in fact, engaged in these two drug deals. We've got very confident eyewitness testimony of several police officers who observed the defendant, who has a distinctive appearance, engaging in these two drug deals. Officer Herod sat in the car right next to the car in which the first transaction happened and immediately after that transaction was able to shake the defendant's hand and look him in the eye. During the second transaction, she sat on the passenger seat of the car next to him while he weighed out the drugs and engaged in the transaction with the informant. So this is not a case in which we've got tenuous, weak evidence. This is a case in which we've got that officer and other officers, all of whom were subjected to pretty vigorous cross-examination about their ability to see Mr. Saturn, and all of them were confident that it was him. And again, I point out that the stipulation in this case did not mention the name or the nature of the prior felony conviction, and those are the two things that the Supreme Court really seemed to focus on in the old Chief Decision in which it talked about the defendant's right to stipulate. Here we have an unadorned stipulation simply mentioning the fact that the defendant had been convicted of a crime punishable by more than one year on a particular day. And that, along with the precautionary instructions given by the court, really served to reduce the risk of any prejudice here. Was Old Chief itself a separate trial of the felon in possession? Old Chief involved the joinder of several counts, including, I believe, a felon in possession count. But the joinder severance issue was not an issue before the court, and it was not addressed by the court. I see. All right. That case involved the defendant's right to stipulate and the government's purported right to put on direct or other evidence of the prior felony. But the court did address the question of how the prior felony can prejudice the defendant and noted that an unadorned stipulation simply establishing the fact of the prior conviction is perhaps to minimize the prejudice to a defendant on the fact of a felony conviction. Unless the court has specific questions about that issue or about the 404B issue, I will just rest on the briefs on the second issue. Very well. Thank you. Thank you. Your Honors, I have just a few seconds. I would just note that this is a case in which not only was the prejudice great, some of the evidence body, there were no drugs, there was no gun, there was no link between the drugs and the gun and drugs and Mr. Saturn. But this is also a case in which the court declined an opportunity provided to it to, in a timely manner and in a strenuous manner, caution the jury and educate the jury about the dangers of considering the evidence of the prior conviction. It declined that opportunity. It's not clear why other than that the court thought that a very brief instruction at the close of trial, not at the beginning of trial, was sufficient. It clearly was not. Well, when did Warder issue that? Oh, Warder was on an earlier day. It was during a different process. It was not after the jury was sworn and focusing its attention on the case. Thank you. I don't have any further time. Let me ask you, was there any reason why you had the stipulation as to the prior felony conviction? Why was it then necessary that the jury be advised? Could the account have been handled by special verdict? You mean with bifurcation sought? There were other matters that were handled effectively by special verdict. As you know, the jury discounted the five-gram minimum in this particular case. I don't think it was specifically proposed by the defense counsel. This is a case in which not only was the motion for severance thrice made and thrice denied, but a counsel's attempt on the day of trial before the judge who had been reassigned to that matter to really further articulate the problems with the jury's instructions and the reason why severance should have been granted were really cut short. And the court stated that it was in a hurry, it didn't have time, and the matter had been sufficiently addressed previously. And he moved on for whatever reason. That took place in that manner. Thank you. Thank you. The matter is then submitted.
judges: Pregerson, Canby, McKeown